**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



BAYER CROPSCIENCE AG,
BAYER CROPSCIENCE NV,

     **Plaintiffs,**

     v.

                                       **CIVIL ACTION NO. 2:12cv47**

DOW AGROSCIENCES LLC,
MYCOGEN PLANT SCIENCE, INC.,
AGRIGENETICS, INC. d/b/a
MYCOGEN SEEDS, LLC, AND
PHYTOGEN SEED COMPANY, LLC,

     **Defendants.**

### *MEMORANDUM OPINION & ORDER*

     Before the Court is Defendant's Motion to Dismiss or, in the Alternative, to Stay This

Action Pending Arbitration, pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6) of the Federal Rules

of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

     For the reasons set forth herein, this matter is hereby **STAYED** pending arbitration

proceedings, pursuant to 9 U.S.C. § 3.

### I. FACTUAL AND PROCEDURAL HISTORY

#### A. The Parties

     Plaintiff Bayer CropScience AG is a German company with its principal place of business

in Monheim am Rhein, Germany.  Compl. ¶ 4.  Bayer CropScience NV is a Belgian company with

its principal place of business in Diegem, Belgium.  *Id.* at ¶ 5.  Bayer CropScience NV holds legal

title to four United States patents, which are the subject of this litigation: 5,561,236 ("the '236 patent"), 5,646,024 ("the '024 patent), 5,648,477 ("the '477 patent"), and 7,112,665 ("the '665 patent"). *Id.* at ¶¶ 21, 31, 41, 51. All four patents bear the title, "Genetically Engineered Plant Cells and Plants Exhibiting Resistance to Glutamine Synthase Inhibitors, DNA Fragments and Recombinants for Use in the Production of Said Cells and Plants." *Id.* at ¶¶ 19, 29, 39, 49.

Defendants Dow AgroSciences LLC ("DAS"), Mycogen Plant Science, Inc. ("MPS") and Agrigenetics LLC d/b/a Mycogen Seeds LLC ("Agrigentics") are Delaware companies with their principal places of business in Indianapolis, Indiana. *Id.* at ¶¶ 6, 7, 8. DAS, MPS and Agrigenetics are wholly-owned subsidiaries of The Dow Chemical Company. *Id.* at 7, 8; Mem. Supp. Mot. Dismiss/Stay Pending Arbit. at 2. Defendant Phytogen Seed, LLC, a Delaware Company with its principal place of business in Indianapolis, is a joint venture between Mycogen Corporation, a wholly-owned subsidiary of The Dow Chemical Company, and J.G. Boswell Company. *Id.* at ¶ 9.

**B. The License Agreement**

This dispute arises out of a patent license agreement between the parties for certain plant biotechnology. Plaintiffs allege that Defendants violated the License Agreement, thereby causing Plaintiffs to terminate the Agreement and sue for patent infringement. Defendants maintain that they have been in compliance with the Agreement and, thus, Plaintiffs' purported termination thereof was ineffective. Defendants deny Plaintiffs' patent infringement claims.

*1. Terms of the License*

On or about June 15, 1992, Bayer's and DAS's predecessors-in-interest, Hoechst Aktiengesellschaft ("Hoechst") and Lubrizol Genetics, Inc. ("LGI"), respectively, entered into the

License Agreement, which provides for the exchange of licenses relating to certain plant

biotechnology. *See* Decl. Jeffrey M. Prokop Supp. Defs.' Mot. Dismiss/Stay Pending Arbit.

("Prokop Decl."), Ex. 7; Pls.' Mem. Opp. Defs.' Mot. Dismiss/Stay Pending Arbit., Ex. A

(hereinafter "License Agmt."). The License Agreement and patents-in-suit pertain to the use of

recombinant DNA to create crops "resistant" to herbicides, which the parties refer to as the

"Glufosinate Patents."

Article 2 of the License Agreement provides DAS and its affiliates with a license to use the

Glufosinate Patents, stating as follows:

> Hoechst hereby grants to LGI and its Affiliates a non-exclusive, fully-paid royalty-free,
> irrevocable worldwide license under the Hoechst Patent Rights to use the Gene for
> transformation purposes in plants other than sugar beet to make, use and sell
> Transformants.

License Agmt. at Art. 2. The License Agreement defines "Gene" as the "glufosinate resistance

gene (PAT gene) forming part of the Hoechst Patent Rights . . . ." *Id.* at Art. 1(b). The License

Agreement further defines the "Hoechst Patent Rights" as including patents entitled "Genetically

engineered plant cells and plants exhibiting resistance to glutamine synthetase inhibitors, DNA

fragments and recombinants for use in the production of said cells and plants." *Id.* at Art. 1(a);

Appendix 1, § 3. Thus, the License Agreement grants DAS a license to use the patents-in-suit,

which have the identical title as this definition of the Hoechst Patent Rights.[1] *See* Compl. ¶¶ 19,

29, 39, 49.

The License Agreement also provides that it "shall be governed by and construed in

accordance with the laws of France." License Agmt. at Art. 12.

---

[1] Further, the parties do not dispute that the patents-in-suit are the subject of the License Agreement.

### 2. Arbitration Clause

The License Agreement contains a mandatory arbitration clause (the "Arbitration Clause"),

which provides for final, binding arbitration in accordance with the Rules of the International

Chamber of Commerce. The Arbitration Clause states, in relevant part:

> Any controversies or disputes in connection with this Agreement which cannot be amicably
> settled by the parties shall be decided by arbitration in accordance with the Rules of
> Conciliation and Arbitration of the International Chamber of Commerce then prevailing.
> The arbitration shall be held at the place of business of the defendant. The decision of this
> Court of Arbitration shall be final and binding on the parties and their legal successors.

License Agmt. at Art. 12.

### 3. Breach Clause

The License Agreement also contains the terms by which the parties should resolve any

alleged breach thereof. Article 9 of the Agreement provides, in relevant part:

> . . . [I]f either party has committed a breach of its obligations under this Agreement and has
> failed to remedy such breach within 60 (sixty) days from the receipt of a notification by the
> other party specifying the breach, the said other party shall be entitled to terminate the
> agreement with immediate effect.

*Id.* at Art. 9.

### C. Prior Litigation Between the Parties

The instant action is the third in a series of related lawsuits that Bayer has brought against

DAS in connection with DAS's development and manufacture of seeds and plants that are

herbicide resistant.[2] Defendants provide the following background relating to the biotechnology

that is at the center of the dispute between the parties:

> A gene that can confer resistance to a particular herbicide when used in a plant is put into a
> plant cell, such as a corn cell. That cell is considered "transformed" with the gene, and the
> gene's integration into the cell's chromosomes is called an "event." Multiple genes of
> varying properties can be put into a cell together, in tandem, as part of a single event,

---

[2] Defendants designated the three lawsuits as "Bayer I," "Bayer II," and "Bayer III," terms which Plaintiffs also used
during oral argument on the instant motion. Thus, the Court retains this designation herein for consistency.

which is commonly referred to as a "molecular stacking" of such genes. The "event" that is most relevant to the instant lawsuit has three kinds of genes located in a "molecular stack" in soybean plants. This soybean "event" contains three different genes which confer resistance to three separate herbicides: (i) 2,4-D, (ii) glyphosate, and (iii) glufosinate. The parties refer to this event as the "Triple Gene Event."

Defs.' Mem. Supp. Mot. Dismiss/Stay Pending Arbit. at 4. Each of the three lawsuits pertains to a specific gene that forms part of the "Triple Gene Event."

### 1. Bayer I: The 2,4-D Herbicide Patent Lawsuit

On December 3, 2010, Bayer filed a complaint against DAS in the United States District Court for the District of Delaware. Bayer alleges that DAS's development and manufacture of plants or seeds that are resistant to the herbicide called "2,4-D" infringes one of Bayer's patents, which is not at issue in the instant case. Bayer I is currently in the discovery stage.

### 2. Bayer II: The "Glyphosate" Herbicide Patent Lawsuit

On November 3, 2011, Bayer filed a second lawsuit against DAS in the District of Delaware, alleging that DAS's Triple Gene Event infringed seven Bayer patents relating to resistance to the herbicide called "glyphosate." Bayer voluntarily dismissed the complaint on March 2, 2012 and then re-filed it in the same court soon thereafter. This case is currently open.

### 3. Bayer III: The "Glufosinate" Herbicide Patent Lawsuit

Bayer III refers to the instant litigation. On November 9, 2011, six days after it filed the complaint in Bayer II, Bayer sent a letter to DAS (the "November 9 Letter") to provide notice that DAS was in material breach of Article 4 of the License Agreement. *See* Prokop Decl., Ex. 8. Article 4 of the Agreement provides that the License Agreement only confers licenses to use the specific technology described in the Agreement, and not to any other technology:

> No right or license is hereby granted, to either party, either expressly or by implication, to use any other proprietary technology owned by or available to the other in connection with the licenses granted hereunder.

License Agmt. at Art. 4; *see also id.* at Art. 9 (License Agreement's provision for notice of material breach).

In the instant case, Bayer's patent infringement claims essentially assert that DAS breached the License Agreement because, in the Triple Gene Event, the licensed glufosinate technology is used together with other technologies owned by Bayer (i.e., 2,4-D and glyphosate technology, which are the subjects of the Bayer I and Bayer II actions, respectively). In response to the November 9 letter, DAS denied any material breach of the License Agreement and asserted that it was in full compliance with it. Prokop Decl., Ex. 9. On January 17, 2012, Bayer sent written notice to DAS that Bayer was terminating the License Agreement. *See* Prokop. Decl., Ex. 10. Bayer then filed this action for infringement three days later, on January 20, 2012. On February 9, 2012, Defendants' counsel sent a letter to Plaintiffs' counsel objecting to Plaintiffs' allegedly improper termination of the License Agreement and stating, *inter alia*, that its infringement claims in this action are subject to mandatory arbitration under Article 12 of the License Agreement. *See* Prokop Decl., Ex. 11. According to DAS, Bayer did not respond to this February 9, 2012 letter.

On March 9, 2012, Defendants then filed the instant Motion to Dismiss or, in the Alternative, to Stay This Action Pending Arbitration, pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. The motion is fully briefed and the Court held a hearing on the motion on Tuesday, July 3, 2012, at 11:30 AM.

### D. The Parties' Positions

Defendants move to dismiss Plaintiffs' patent infringement claims principally under Rule 12(b)(1) for lack of subject matter jurisdiction, based upon the arbitration clause contained within

6

the License Agreement between the parties.  Defendants also move to dismiss the claims under

Rule 12(b)(6) for failure to state a claim upon which relief can be granted, based upon Defendants'

alleged license to use Plaintiffs' patent without restriction.  In this way, Defendants contend that

Plaintiffs' purported termination of the License Agreement was ineffective.[3]  Alternatively,

Defendants move to stay this proceeding pending arbitration of the issues of alleged breach and

termination of the License Agreement, as well as the patent infringement claims, pursuant to the

Federal Arbitration Act, 9 U.S.C. § 3.

Plaintiffs concede that the License Agreement pertains to the patents-in-suit and that the

issue of whether the parties have complied with the License Agreement must be arbitrated.

However, Plaintiffs oppose Defendants' motion to dismiss for lack of subject matter jurisdiction

on the premise that an arbitration clause contained within the License Agreement does not divest

this Court of jurisdiction over the case.  Plaintiffs further argue that, while the validity of the

License Agreement may be arbitrated, the other issues relating to the patents-in-suit – namely,

whether Defendants infringed the patents, whether those patents are valid, the amount of any

damages and the merit of any affirmative defenses – should be resolved by this Court and do not

require a stay of discovery or the case's progression to trial.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

*1. Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court

lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Unless a matter involves an area over

---

[3] While Defendants also make passing reference to Federal Rule of Civil Procedure 12(b)(3), dismissal for lack of venue, they do not brief this ground for dismissal in their Memorandum.  Thus, the Court does not address this basis for dismissal herein.

which federal courts have *exclusive* jurisdiction,[4] a plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States," 28 U.S.C. § 1332(a)(1). *See Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999) ("Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction."). Accordingly, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

The Court assumes that all factual allegations in the complaint are true if it is contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, if the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or whatever other evidence has been submitted on the issues, *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

*2. Failure to State a Claim Upon Which Relief May Be Granted*

A motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), tests the legal

---

[4] *See* 28 U.S.C. § 1333 (federal courts have exclusive jurisdiction to hear admiralty, maritime, and prize cases); 28 U.S.C. § 1334 (federal courts have exclusive jurisdiction to hear bankruptcy cases and proceedings).

sufficiency of a complaint. Federal Rule of Civil Procedure 8 only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a plaintiff still must provide the Court with more than a mere "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must be supported by factual allegations that raise a right to relief above the speculative level. *Id.* A claim is considered facially plausible when the plaintiff gives the court more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Motion to Stay Pending Arbitration

The Federal Arbitration Act ("FAA") provides, in relevant part, as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The United States Supreme Court has stated that the FAA expresses:

> Congress's clear intent . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible. The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983); *see also Sandata Techs., Inc. v. Carewatch, Inc.*, No. 3:05cv1714, 2006 WL 1172195, at *1 (D. Conn. Apr. 20, 2006) (citing *Mercury Const. Corp.*, 460 U.S. at 22). The Supreme Court also has stated that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope

9

of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Mercury Const. Corp.*, 460 U.S. at 24-25. Furthermore,

> . . . it has been established that where the contract contains an arbitration clause, there is a
> presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance
> should not be denied unless it may be said with positive assurance that the arbitration
> clause is not susceptible of an interpretation that covers the asserted dispute. Doubts
> should be resolved in favor of coverage."

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United*

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

"The FAA requires that a district court, upon motion by any party, 'stay judicial

proceedings involving issues covered by written arbitration agreements.' " *Wheeling Hosp., Inc. v.*

*Health Plan of the Upper Ohio Valley, Inc.*, __F.3d__, 2012 WL 2402614, at *4 (4th Cir. 2012)

(quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir.

2001)); *see also* 9 U.S.C. § 3. "When a party seeks enforcement of the arbitration clause of an

agreement during proceedings in a district court, a party sufficiently 'invoke[s] the full spectrum of

remedies under the FAA, including a stay under § 3.' " *Id.* at *4 (citing *Choice Hotels Int'l, Inc.*,

252 F.3d at 710).

The Fourth Circuit has held, "To decide whether an arbitration agreement encompasses a

dispute a court must determine whether the factual allegations underlying the claim are within the

scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan &*

*Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988) (citing *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 (1985)). Along these lines,

this Court has observed that, "[i]n determining whether an order compelling parties to arbitrate is

proper, many courts have employed a three-part test, examining: '(1) whether the parties have

made an agreement to arbitrate; (2) the scope of the agreement; [and] (3) whether the federal

statutory claims are arbitrable.' " *Woolridge v. Securitas Sec. Servs. USA, Inc.*, No. 3:06cv573,

2006 WL 3424469, at *1 (E.D. Va. Nov. 21, 2006).

Further, Congress has authorized arbitration of disputes relating to patent infringement

under 35 U.S.C. § 294, which provides in relevant part:

> (a) A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract. In the absence of such a provision, the parties to an existing patent validity or infringement dispute may agree in writing to settle such dispute by arbitration. Any such provision or agreement shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract.

> (b) Arbitration of such disputes, awards by arbitrators and confirmation of awards shall be governed by title 9, to the extent such title is not inconsistent with this section. In any such arbitration proceeding, the defenses provided for under section 282 of this title shall be considered by the arbitrator if raised by any party to the proceeding.

35 U.S.C. §§ 294(a)-(b).  Section 294 refers to the defenses of noninfringement, absence of

liability for infringement, unenforceability, and invalidity, among others, which are enumerated in

35 U.S.C. § 282.

### III. DISCUSSION

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants argue that this matter should be dismissed for lack of subject matter jurisdiction

because of the License Agreement between the parties, which provides for arbitration of "any

controversies or disputes in connection with" the Agreement.  Plaintiffs argue that, while the

patents-in-suit are the subject of the License Agreement, the only arbitrable issue is whether the

11

License Agreement was properly terminated, thereby rendering Defendants' continued use of the genes that the patents cover patent infringement.

As discussed *supra*, the FAA provides that a district court may stay an action pending arbitration. 9 U.S.C. § 3. The FAA also states that a party may petition any district court to compel arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Thus, these provisions confer upon this Court the authority to retain jurisdiction over a matter that is subject to arbitration.

The Fourth Circuit has not resolved the question of whether a stay or dismissal is warranted when a matter is subject to arbitration. On this issue, the Fourth Circuit has stated, "When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration . . . ." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). Two years later, the Fourth Circuit then asserted that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc.*, 252 F.3d at 709-10. Earlier this year, the Fourth Circuit observed the disparate approaches it has taken on this issue:

> There may be some tension between our decision in *Hooters* – indicating that a stay is required when the arbitration agreement "covers the matter in dispute" – and *Choice Hotels* – sanctioning dismissal "when all of the issues presented . . . are arbitrable." Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration . . . . We need not resolve this disagreement because, even under *Choice Hotels*, dismissal is not appropriate where, as here, the issues are not all subject to arbitration.

*Aggarao v. MOL Ship Management Co., Ltd*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (citations

omitted). Furthermore, in *Silkworms Screen Printers, Inc. v. Abrams*, the Fourth Circuit provided

a district court with the option of either dismissing a dispute covered by an arbitration agreement

for lack of subject matter jurisdiction or staying that action pending the arbitration proceeding:

> If the district court finds that Silkworm agreed to arbitrate, it should enter an order
> directing arbitration in accordance with the agreement. It may either dismiss Silkworm's
> complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration
> and consideration of the award pursuant to Article V of the Convention.

*Silkworm Screen Printers, Inc. v. Abrams*, No. 91-1631, 1992 WL 317187, at *6 (4th Cir. 1992).

By contrast, the Federal Circuit has reasoned that an arbitration agreement does not divest

the court of jurisdiction to hear a matter: ". . .[W]hile older case law suggests that an arbitration

clause 'ousts a court of jurisdiction, that view has lost much, if not all, of the legitimacy it once

may have had.' Arbitration agreements are properly viewed as contractual arrangements for

resolving disputes, not as documents divesting a court of jurisdiction." *Hardie v. United States*, F.

App'x 899, 906 (Fed. Cir. 2001) (quoting *DiMercurio v. Sphere Drake Ins.*, 202 F.3d 71, 76 (1st

Cir. 2000) (citing to several cases indicating that arbitration agreements are on the same footing as

other contracts and holding that such agreements are not destructive of jurisdiction.).

In light of the foregoing disparate case law, Defendants have failed to demonstrate that this

action should be dismissed for lack of subject matter jurisdiction. Plaintiffs have pleaded

sufficient facts for this Court to invoke its jurisdiction. Further, the Court finds that outright

dismissal of this case is not warranted, as the Court is authorized by statute to stay a matter

pending arbitration and to compel arbitration should a party refuse or neglect to arbitrate. *See* 9

U.S.C. §§ 3-4. Given Plaintiffs' concern that Defendants may not agree to arbitrate, the Court

believes that its retention of jurisdiction over this matter is the most prudent course of action

should future issues arise relating to the arbitration proceedings, discussed *infra*. Therefore, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

### B. Motion to Dismiss for Failure to State a Claim

In a patent infringement case, a plaintiff must prove that a person "without lawful authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). While Defendants claim that Plaintiffs have failed to meet their pleading standard under this statute, it is apparent that they have done so. Defendants focus on the fact that Plaintiffs have not properly pleaded the necessary element of infringement "without lawful authority" based on the License Agreement between the parties. However, Plaintiffs clearly allege, first, that Defendants violated the License Agreement and thereby infringed their patents and second, that Plaintiffs terminated the License Agreement in January 2012, meaning that any continued use of the patents would be unlawful. Construed in the light most favorable to Plaintiffs, these facts are sufficient to survive a Rule 12(b)(6) motion to dismiss. As the other elements of Plaintiffs' cause of action for patent infringement do not appear to be in dispute at this stage of the litigation, Plaintiffs have satisfied their burden. Therefore, Defendants' Motion to Dismiss on the alternative ground of failure to state a claim upon which relief may be granted is **DENIED**.

### C. Motion to Stay Pending Arbitration

The parties agree that the questions of whether Defendants violated the License Agreement and whether Plaintiffs validly terminated the Agreement should be submitted to arbitration. Where the parties differ is on the issues of whether an arbitrator, as opposed to this Court, should determine threshold issues of arbitrability, and whether Plaintiffs' patent infringement claims

14

should be submitted to arbitration. Defendants assert that an arbitrator, not this Court, should decide the threshold issue of which claims are arbitrable, and that all claims, including the patent infringement claims should be decided by an arbitrator, while Plaintiffs take the opposing view on both issues.

Regarding the threshold question of whether the Court or an arbitrator should decide threshold issues of arbitrability, the Fourth Circuit has stated generally the district court should decide the scope of the issues to be submitted to arbitration:

> The general rule is that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide as a matter of contract interpretation. But parties may of course provide by contract for arbitration even of arbitrability issues.

*Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993).

However, this Court has observed that a majority of federal courts have held that "the incorporation of the [American Arbitration Association] Rules into a contract 'clearly and unmistakably vests the arbitrator, not the district court, with authority to decide which issues are subject to arbitration.' " *Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, __ F. Supp. 2d __, 2012 WL 12785, at *5 (E.D. Va. Jan. 4, 2012). The Court in *Systems Research* reasoned that "Rule R–7 of the AAA Commercial Arbitration Rules provides that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.' " *Sys. Research & Applications Corp.*, 2012 WL 12785, at *5 (citing AAA, Commercial Arbitration Rules R–7(a) (2009)).

Similarly, several circuits have held that an agreement's incorporation of the arbitration rules at issue in this case – the International Chamber of Commerce (ICC) Rules[5] – is clear and

---

[5] The License Agreement reads: "Any controversies or disputes in connection with this Agreement which cannot be amicably settled by the parties shall be decided by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce then prevailing." License Agmt. at Art. 12.

unmistakable evidence of the parties' intent to submit this threshold issue to an arbitrator. *See, e.g.*, *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC . . ., Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie agreement to arbitrate whose continued existence and validity is being questioned."). Thus, like the AAA Rules, the ICC Rules also grant the arbitrator the ability to determine which issues are subject to arbitration. *See id.* The Court in *Systems Research* further noted that the Fourth Circuit has not yet ruled on the question of whether an agreement's incorporation of a specific set of arbitration rules means that the parties clearly intended to submit this threshold issue to arbitration. *Sys. Research & Applications Corp.*, 2012 WL 12785, at *5.

Accordingly, the Court notes the persuasive authority from several circuits but finds that the threshold question of arbitrability when an arbitration clause invokes the ICC rules remains unsettled in this Circuit. Therefore, on the authority of *Virginia Carolina Tools*, the Court finds that it may determine this threshold issue of arbitrability. *See Virginia Carolina Tools, Inc.*, 984 F.2d at 117 ("The general rule is that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide . . . .).

The Court next addresses whether it should compel arbitration in this case and which claims should be subject to arbitration. In order to make this determination, the Court may employ a three-part test, examining: "(1) whether the parties have made an agreement to arbitrate; (2) the scope of the agreement; [and] (3) whether the federal statutory claims are arbitrable." *Woolridge*, 2006 WL 3424469, at *1. In the instant case, Defendants have satisfied the three prongs in order

16

to compel arbitration. First, the parties clearly have agreed to arbitrate based on the Arbitration

Clause in the License Agreement. *See* License Agmt. at Art. 12. Second, the scope of that

Arbitration Clause is very broad, namely "*[a]ny* controversies or disputes *in connection with* this

Agreement." License Agmt. at Art. 12 (emphasis added). As already noted, the parties do not

dispute that the alleged breach and termination of the License Agreement are arbitrable issues.

Third, under 35 U.S.C. § 294, patent infringement claims are expressly arbitrable. Therefore, the

Court finds that both the alleged breach and termination of the License Agreement and the patent

infringement claims are subject to arbitration here.

Specifically, case law supports Defendants' position that patent infringement claims

sufficiently connected to the License Agreement may be, and should be, arbitrated. Notably,

Plaintiffs conceded at oral argument that if an arbitrator found that Defendants did not violate the

License Agreement, Plaintiffs would not have valid patent infringement claims. Mot. Hr'g Tr. at

19:9-19:13, 26:19-27:3 (July 3, 2012).[6]   It is logical that breach of the License Agreement and

infringement of the patents covered by that same License Agreement would be addressed in the

---

[6] Plaintiffs' counsel stated: "[The case] may come back and [Defendants] may be able to prove there wasn't a
violation [of the License Agreement] and, therefore, they have a license and then this case fails. This litigation fails,
then, if they have a license. But that's a predicate to this case. Mot. Hr'g. Tr. at 19:9-19:13. The following exchange
between the Court and Plaintiffs' counsel also illustrates Plaintiffs' concession:

> THE COURT: . . . If the arbitrator decides that there is no violation whatsoever by the defendants of the
> license agreement, meanwhile you are over in federal court here bringing patent infringement claims against
> the defendant, don't we have a waste of judicial economy and time here?
> MR. KOCH [Plaintiffs' Counsel]: If we had a crystal ball and we knew the Court was going to say that they
> weren't in violation, I would say absolutely that would be a waste of time.

Mot. Hr'g Tr. at 26:19-27:3.

17

same proceeding, as the case of *Rhone-Polenc Specialities Chimiques v. SCM Corporation* demonstrates.

In *Rhone-Polenc Specialities Chimiques v. SCM Corporation*, the Federal Circuit encountered a similar scenario to the instant case, where a dispute about the amount of royalties owed pursuant to a patent license agreement turned on whether the licensee used the patented technology. *Rhone-Polenc Specialities Chimiques v. SCM Corp.*, 769 F.2d 1569 (Fed. Cir. 1985). As a result, the amount of royalties owed required the district court to analyze the scope, validity and infringement of the patent that was the subject of the license agreement. The license agreement contained an arbitration clause providing that "[a]ny controversy or claim arising out of or relating to this [patent license] Agreement or the breach thereof, shall, unless amicably adjusted otherwise, be settled by arbitration in Florida in accordance with the rules of the International Chamber of Commerce." *Id.* at 1571. The Federal Circuit held that the district court committed clear error by finding that the dispute did not fall within the scope of the arbitration agreement. *Id.* at 1572. The Federal Circuit's reasoning is particularly instructive:

> The issues of scope and infringement should be considered together as they are not separate and distinct issues. The claim defines the scope, or limits, of the right to exclude conferred by the patent. Infringement takes that analysis, involving the construction and interpretation of the claim, one step further to determine whether the claim so construed "reads on" the accused process. Such is the case at hand where, semantics aside, the dispute between the parties is whether SCM is or is not operating within the scope of claim 2 of the '485 patent so that a percentage royalty under the agreement, rather than just a minimum royalty, is due.
>
> Although the dispute involves claim interpretation, it *arises* out of the [license] agreement. The agreement licensed SCM to use the chemical process of claim 2 and sell the product in exchange for royalty payments, which depended completely upon whether SCM was operating within or outside the scope of claim 2.
>
> We hold that the determination of the scope and infringement of the "485 patent are the quintessence of the agreement and that the parties intended such central determinations to

18

> be included within the scope of its broad arbitration clause. The district court's holding to the contrary is clear error.

*Id.* at 1572 (emphasis in original). *See also Polymer Tech. Sys., Inc. v. Roche Diagnostics Corp.*, No. 1:10–cv–0061–LJM–TAB, 2010 WL 3782173 (S.D. Ind. Sept. 20, 2010) (dismissing patent infringement claim in favor of arbitration pursuant to arbitration clause in patent license agreement), *Sandata Techs., Inc.*, 2006 WL 1172195, at \*2-\*3 (granting accused infringer/licensee's motion to compel arbitration of patentee's infringement claims because claims fell within the broad scope of the parties' arbitration provision).

In the instant case, the Arbitration Clause is similarly broad. The plain language of the Arbitration Clause calls for arbitration of "[a]ny controversies or disputes in connection with this Agreement." License Agmt. at Art. 12. Additionally, patent infringement claims are arbitrable under 35 U.S.C. § 294. Moreover, the broad federal policy favoring arbitration, especially in international disputes, leads the Court to find that arbitration of *all* claims, including the patent infringement claims, is proper here. *See Mercury Const. Corp.*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

Another instructive case for the Court is *Sandata Technologies, Inc. v. Carewatch, Inc. Sandata Techs., Inc.*, 2006 WL 1172195. After holding that the alleged breach and termination of a patent license agreement were subject to arbitration, the district court in *Sandata Technologies* reasoned that the patent infringement claims also should be arbitrated, given the license agreement's broad language. *Id.* at \*2-\*3. The *Sandata* court used similar logic to that which the Court applies here:

19

It is less obvious whether, in the event that the arbitrator concludes that CareWatch breached the Agreement and that Sandata validly terminated CareWatch's rights therein, Sandata's patent infringement claims would fall within the scope of the arbitration provision, but considering the broad nature of the arbitration provision, in light of the policy favoring liberal construction of arbitration agreements and the presumption of arbitrability articulated by the Second Circuit . . . , and given that resolution of the License Agreement issues is a necessary predicate to the adjudication of any patent infringement claims, the Court concludes that such claims "touch matters" covered by the parties' arbitration agreement and that they thus fall within the scope of that agreement.

*Sandata Techs. Inc.*, 2006 WL 1172195, at \*2-\*3 (citations omitted).

Plaintiffs argue that their patent infringement claims are not arbitrable for several reasons. Plaintiffs assert that an agreement to arbitrate patent infringement claims requires clear language in the contract expressing this intent and they point to the plain language of 35 U.S.C. § 294 to support their argument. However, the Court declines to adopt this exceedingly narrow reading of 35 U.S.C. § 294, which contains permissive, rather than mandatory, language. *See* 35 U.S.C. § 294. Further, Plaintiffs cite to no legal authority for their assertion that 35 U.S.C. § 294 requires express language in the contract indicating that parties specifically intended to arbitrate patent infringement claims. Moreover, as Defendants point out in their Reply to Plaintiffs' Opposition, several cases compelling arbitration of patent infringement claims lacked this express language and the courts nonetheless held that arbitration of the patent infringement claims was proper. *See, e.g.*, *Rhone-Polenc Specialities Chimiques*, 769 F.2d 1569; *Polymer Tech. Sys., Inc.*, 2010 WL 3782173; *Sandata Techs. Inc. v. CareWatch, Inc.*, 2006 WL 1172195, at \*2-\*3.

Plaintiffs also generally argue that their patent infringement claims are not arbitrable for a variety of other reasons. However, as the foregoing discussion and the cases cited herein indicate, this assertion is incorrect and Plaintiffs' attempts to distinguish these cases are valiant but ultimately unsuccessful. In particular, Plaintiffs' reliance on *Promega Corporation v. Life*

*Techonolgies Corporation* is unavailing. *See Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352

(Fed. Cir. 2012). In *Promega*, the Federal Circuit affirmed a district court's order compelling

arbitration of a patent license agreement where the plaintiff's patent infringement claims for five

patents – one of which included the patent subject to the license agreement – remained pending in

the district court. *Id.* at 1359. The Federal Circuit stated:

> In this case, Promega's claims of infringement of four patents pending before the district
> court have no relationship to the arbitrable claims. The arbitrable claims under the 1996
> agreement are related to the district court proceedings only in that Promega asserts
> infringement of a fifth patent – the '984 patent – which is one of the patents licensed to
> Promega under the 1996 agreement which Promega contends entitles it to sue for
> infringement.

*Id.* at 1358. The district court's reasoning for not compelling arbitration of the patent infringement

claims in *Promega* is not apparent from the record but the Federal Circuit clearly focused on the

import of the fact that the bulk of the patent infringement claims were unrelated to the arbitration

proceedings. *See id.* In these ways, *Promega* is distinguishable from the instant case on its facts.

Before this Court is one patent and one license agreement. Most importantly, resolution of the

license agreement may also resolve the patent infringement claims, as Plaintiffs have

acknowledged here. Therefore, the Court finds that severing a cause of action in this case would

be illogical and imprudent.

Accordingly, Defendants' alternative Motion to Stay This Action Pending Arbitration is

**GRANTED**. All issues, including the alleged breach and termination of the License Agreement

and Plaintiffs' four patent infringement claims in its Complaint, shall be submitted to arbitration in

accordance with this Order and the License Agreement between the parties. Further, the Court

notes its authority to order dismissal of this action *sua sponte* should the Court deem it necessary

to do so in the future.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, to Stay This Action Pending Arbitration is **DENIED IN PART AND GRANTED IN PART**. Defendants' Motion to Dismiss is **DENIED** and Defendants' alternative Motion to Stay This Action Pending Arbitration is **GRANTED**. All issues, including the alleged breach and termination of the License Agreement and all counts of Plaintiffs' Complaint in this case, shall be submitted to arbitration in accordance with this Order and the License Agreement between the parties.

The parties are **DIRECTED** to commence arbitration procedures within thirty (30) days of the date of this **ORDER** and to file notice of same with this Court. **IT IS FURTHER ORDERED** that once arbitration commences, the parties shall provide to the Court a joint status report every one hundred twenty (120) days until the arbitration is concluded or the case is otherwise dismissed from the Court's docket.

This matter is hereby **STAYED** pending arbitration procedures, pursuant to 9 U.S.C. § 3. During the pendency of this stay, either party may apply to the Court for further relief as the Court may see proper to provide, pursuant to 9 U.S.C. § 4.

The Clerk is **DIRECTED** to send a copy of this Order to the counsel of record.

**IT IS SO ORDERED.**

_____
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
July/3 , 2012